**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BRIAN MORRIS, et al.,** | : | **Civil No. 4:14-CV-709** |
| | : | |
| **Plaintiffs** | : | **(Judge Brann)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson** |
| | : | |
| **SHICKSHINNY BOROUGH, et al.,** | : | |
| | : | |
| **Defendants** | : | |

**REPORT AND RECOMMENDATION**

## I.  INTRODUCTION

This is a civil action brought by Brian Morris, a former part-time police officer with the Shickshinny Borough Police Department, and his wife, Paula, alleging an array of personal grievances he has had with the Shickshinny Borough and a number of its officials.[1]  Specifically, Morris claims that the defendants defamed him in violation of Pennsylvania law, and that the defendants violated his civil rights by denying him procedural and substantive due process in connection with the termination of his employment, and by retaliating against him after he allegedly engaged in protected activity.

---

[1]  The individual defendants include Joseph (a/k/a "Barry") Noss; Michael Steeber; James Wido; and Rosalie Whitebread.  It is alleged that each of the individual defendants was a member of the Shickshinny Borough Council at all times relevant to this action.  (Am. Compl., ¶ 8.)

This is now the second time that the case has come before the Court on a motion to dismiss filed by the defendants.  The case was initially filed on April 10, 2014.  (Doc. 1.)  The defendants then moved to dismiss the complaint for failure to state a claim.   (Doc. 6.)   On March 10, 2015, we issued a report and recommendation recommending that the motion to dismiss be granted in part and denied in part.  (Doc. 22.)  On April 6, 2015, the District Court entered an order adopting the report and recommendation in part and rejecting it in part, dismissing a number of claims and directing the plaintiff to file a more definite statement with respect to their remaining due process and retaliation claims.  (Doc. 27.)  In the same order, the District Court remanded the case to the undersigned for case management.

On May 6, 2015, the plaintiffs filed an amended complaint.  (Doc. 31.)  That pleading specifically alleges the following causes of action:  (1) a liberty-interest due-process claim for alleged violations of Morris's rights under the Fourteenth Amendment; (2) defamation; (3) First Amendment retaliation; (4) a violation of Morris's due process rights protected by the Fifth and Fourteenth Amendment; and (5) a state-law claim for loss of consortium.

On May 20, 2015, the defendants moved to dismiss the amended complaint. (Doc. 33.)  That motion is fully briefed and ripe for disposition.  For the reasons

that follow, it will be recommended that the motion be granted in part and denied in part.

## II.   **FACTUAL BACKGROUND**

Like the pleading that initiated this action, the amended complaint is a relatively spare and somewhat confusing document in terms of the facts alleged and the factual basis for the legal claims made against the defendants. Nevertheless, the factual background to this report and recommendation is taken from the well-pleaded allegations set forth in this amended pleading, which are accepted as true for purposes of considering the defendants' motion.

On or about November 23, 2010, Brian Morris was hired by Shickshinny Borough as a part-time police officer.  (Am. Compl., ¶ 13.)  Morris claims that he was subjected to instances of criticism and even "severe chastisement" by certain of the individual defendants for decisions that he made either in his capacity as a police officer or as a member of the community.  Thus, Morris alleges that in September 2011, defendants Barry Noss and Michael Steeber severely criticized him for reporting an oil leak that he had discovered within the Borough garage.[2] (*Id.*, ¶ 18.)  Nearly a year later, in August 2012, Noss and Steeber criticized Morris for "illegally fix[ing]" a parking ticket, claiming that Morris had reduced a $300

---

[2]  It appears that Noss and Steeber were concerned that the reporting of the oil leak could trigger scrutiny by environmental officials and potentially cost the Borough money, and they were angry that Morris had raised an issue that they believed was outside the scope of his duties as a police officer.  (*Id.*, ¶ 18)

ticket to $15.  (*Id*., ¶ 19.)  Morris has many explanations for why the reduction of the parking ticket was justified, but contends that he suffered sustained criticism and confrontation by Steeber and Noss regarding this incident.  According to Morris, Steeber confronted him with the ticket and the cash used to pay the fine, which then allegedly "disappeared."  (*Id*., ¶ 23.)  Morris denies having anything to do with the disappearance of the $15 and the ticket.  (Id.)

Nevertheless, Morris claims that on numerous occasions in 2012 and 2013, Noss referred to Morris as a thief, and in June 2013, Steeber said at a public meeting that Morris was "useless".  (*Id*., ¶¶ 24-25.)  On other occasions, Steeber made statements to the effect that Morris was "not hired to fight crime in Shickshinny, instead he wanted him to write parking tickets."  (*Id*., ¶ 26.)  Buddy Noss paraphrased Steeber, stating "on numerous occasions" that Morris was "not doing his job as a police officer."  (*Id.*, ¶ 27.)

The rhetoric continued into the autumn of 2013, with Noss stating during a public meeting in September or October of that year that Morris was "useless and not doing his job" and was "a liar".  (Id., ¶ 28.)  Also between September and November of 2013, Noss circulated a letter and political campaign literature in which he claimed Morris was not doing his job properly.  (*Id*., ¶ 29.)  Apparently also during this time, Noss made statements claiming that Morris had altered his time card to charge for time he did not work, and also accused Morris of being

4

untruthful on at least three occasions.   According to Morris, "all of the aforementioned statements are false and defamatory."   (*Id.*, ¶ 30.)   Morris also attached to the amended complaint a copy of the campaign literature that Noss allegedly circulated throughout the Borough, which was critical of Morris.   (Am. Compl., Ex. A.)

In October 2013, the Borough suspended Morris for five days allegedly without notice and without advising him that he had a right to request a hearing. (*Id.*, ¶ 31.)   Morris claims that Steeber told him that the police committee was suspending him and that there was no appeal available.   Later, in February 2014, Steeber apologized to Morris and told him that he should have been given a hearing.  (*Id.*, ¶32.)   Prior to that apology, however, in January 2014, the Borough, through its Council, voted not to rehire Morris as a part-time police officer.  (*Id.*, ¶ 33.)   Morris requested a hearing on the Borough's decision not to renew his hire, but was not given one.  (*Id.*, ¶ 34.)

Morris alleges that the defendants, "by their actions" damaged his ability to find other employment, particularly in the public sector.  (Id., 36.)   The plaintiffs allege that the foregoing conduct, concluding with Morris's termination as a police officer, violated his right to substantive and procedural due process and was defamatory.  (*Id.*, Counts I and II.)

Morris also alleges that defendants Noss, Steeber, Wido and Rosalie Whitebread retaliated against him "as a result of the fact that [he] complained about the defendants' violation of his rights under the United States Constitution." (*Id.*, ¶ 41.)  Although this allegation is conclusory and vague, Morris offers some scattered allegations in an effort to articulate the nature of his allegedly protected conduct and the defendants acts to retaliate against him for engaging in that conduct.  Morris claims that he "complained to the individual defendants when they improperly disciplined him and when they defamed him," and also when he complained that the Council was acting to hold a "secret meeting" about him.  (*Id.*, ¶¶ 42-43.)  At other places in the complaint, the nature of Morris's retaliation claims become more specific but also more confusing.  For example, Morris seems to be claiming that he was ultimately terminated because Steeber was "angry" that Morris had on one occasion stopped a vehicle in which one of Steeber's friend's daughters was a passenger, and found heroin in the car.  (*Id.*, ¶ 45.)  It is not clear how this act of police work constitutes constitutionally protected activity, but nevertheless appears to form one of Morris's allegations for the reason his employment was terminated.

Curiously, later in the complaint Morris attempts to articulate another due process claim, also based on an allegation that he was mistreated for simply doing his job, where he alleges that he was "terminated in part because he attempted to

do his job properly and in accordance with the law." (*Id.*, ¶ 47.)  Thus, Morris claims a due process violation in connection with his termination, which he contends had something to do with his investigation into allegations that defendant Whitehead's family had wrongfully received a distribution of certain funds that were intended to benefit flood victims.   Morris claims that when the Council discovered that Morris was conducting such an investigation – the results of which are never revealed in the amended complaint – "harassment of the plaintiff increased." (*Id.*)

There also appears to have been a mix-up with respect to one of Morris's paychecks, in which he had misplaced a check that was later reissued and cashed. Sometime in between, the plaintiff's wife found and cashed the first check without realizing that her husband had already deposited the reissued check.  (*Id.*, ¶ 48.) Morris claims that the Council refused to issue him further payments until he had returned the money, something that Morris claims is unlawful and is something that he complained about to the Pennsylvania Labor Relations Board.   Morris alleges that his act of going to the PLRB was partly what led to his suspension and eventual termination.  (*Id.*, ¶ 50.)

It is against this backdrop that we consider this motion to dismiss.

## III.   <u>DISCUSSION</u>

### A.   **Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted.  The moving party bears the burden of showing that no claim has been stated, *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir.2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957) ).  The facts alleged must be sufficient to "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. 544, 555.  This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of necessary elements of the plaintiff's cause of action.  *Id.* at 556. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir.2008) (brackets and quotations marks omitted) (quoting *Twombly*, 550 U.S. 544, 555).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir.2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir.1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir.2002); *see also U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment."). However, the court may not rely on other parts of the record in determining a motion to dismiss. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir.1994).

As we did in the Court's prior report and recommendation, we are constrained to remind the plaintiffs that they may not amend the allegations made in the amended complaint by presenting new arguments in a brief opposing the defendants' motion to dismiss. *See Pennsylvania ex rel. Zimmerman v. Pepsico,*

*Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984); *cf. Frederico v. Home Depot*, 507 F.3d 188, 202 (3d Cir. 2007) ("[W]e do not consider after-the-fact allegations in determining the sufficiency of [a] complaint under Rules 9(b) and 12(b)(6)."). Although we previously advised the plaintiffs regarding the impossibility of amending their pleading in later argument, they have in a number of instances appeared to do just that again in response to the defendants' pending motion.

With these legal parameters in mind, we turn to the defendants' substantive arguments.

## B.    Due Process – Deprivation of Liberty Interest in Reputation

This case is grounded in the plaintiff's contention that the suspension and eventual termination of his employment violated his right to due process guaranteed by the Fourteenth Amendment to the United States Constitution. The Fourteenth Amendment provides that a state may not "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend XIV, § 1. "Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Wisconsin v. Constantineau*, 400 U.S. 433, 436 (1971). However,

"[s]tigma to reputation alone, absent some accompanying deprivation of present or future employment, is not a liberty interest protected by the fourteenth amendment." *Edwards v. Cal. Univ. of Pa.*, 156 F.3d 488, 492 (3d Cir. 1998) (quoting *Robb v. City of Philadelphia*, 733 F.2d 286, 294 (3d Cir. 1984)).

The plaintiff's first claim is that the defendants' termination of his employment as a police officer constituted a deprivation of his liberty interest in his reputation – something that the courts typically have referred to as a "stigma-plus" due process violation.  As the Supreme Court as explained, in order to make out such a claim, a plaintiff "must show a stigma to his reputation *plus* deprivation of some additional right or interest."  *Paul v. Davis*, 424 U.S. 693, 701 (1976) (original emphasis).  In the public employment context, the "stigma-plus" test has been applied to mean that when an employer "creates and disseminates a false and defamatory impression about the employee in connection with the termination," it deprives the plaintiff of a protected liberty interest.  *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006) (citing *Codd v. Velger*, 429 U.S. 624, 628 (1977)).  The creation and dissemination of a false and defamatory impression is the "stigma" and the termination is the "plus".  *Id.*  When such a deprivation occurs, the employee is entitled to a name-clearing hearing.  *Id.*

However, not every negative statement about an employee will satisfy the "stigma" prong of the analysis.  Thus, statements that relate to an employee's

improper or inadequate performance, incompetence, neglect of duty or malfeasance will not qualify as grounds for a liberty interest claim. *See Brown v. Montgomery Cnty.*, 470 F. App'x 87, 91 (3d Cir. 2012) (publication of employer's comments that the plaintiff violated the county code did not add to the stigma that the plaintiff brought on himself through his conduct); *Kohn v. Sch. Dist. of City of Harrisburg*, 817 F. Supp. 2d 487, 498-99 (M.D. Pa. 2011) (accusations of poor performance and questioning of competency do not satisfy stigma prong). In order to satisfy the "stigma" prong of the test, the stigmatizing statements must have been made publicly and must have been false. *Hill*, 455 F.3d. at 236.

In *Hill*, a borough manager complained that the town's mayor harassed him and other borough employees, and when he reported the harassment to the borough council, the mayor intensified the attacks. *Hill*, 455 F.3d at 230. The mayor defamed the borough manager at the workplace, at council meetings, and to the public through newspaper articles. *Id.* at 231. As a result of the mayor's conduct and the hostile work environment, the borough manager was forced to resign. *Id*. The court held that the borough manager sufficiently alleged deprivation of a liberty interest protectable under the Due Process Clause. *Id.* at 239. The court reasoned that the borough manager was defamed in connection with his discharge, which was sufficient to satisfy the "plus" prong of the "stigma-plus" test. *Id*. The plaintiff was not given the process he was due – specifically, a name-clearing

12

hearing.  *Id.*  Consequently, he "stated a claim for deprivation of his liberty interest in his reputation without the process the U.S. Constitution requires."  *Id.*

The plaintiff argues that his case is closely analogous to *Hill*, but it is not clear from the amended complaint that this is so, and this lack of clarity is directly tied to the fact that the plaintiffs' complaint remains a vague, conclusory and often confusing document that often omits allegations about critical facts.  This is particularly notable in this case because the plaintiffs were previously placed on notice that their initial complaint suffered from substantial shortcomings and required clarification.  Unfortunately, the plaintiffs have in large measure not heeded that direction from the Court and have instead repackaged many of their claims and rearranged their factual allegations in an amended complaint that bears substantial similarity to the pleading that was found wanting initially.  (Am. Compl., ¶¶ 17-37.)  We will highlight some of the substantive inadequacies of the complaint below.

### 1.  The Plaintiffs Have Not Made a Stigma-Plus Claim Against Defendants Wido or Whitebread

It is hornbook law that in order to state a claim for a constitutional violation, as the plaintiff has done here with his stigma-plus claims, every defendant alleged to have committed the violation must have had direct personal involvement in the alleged wrongs.  *Sutton v. Rasheed*, 323 F.3d 236, 249-50 (3d Cir. 2003) (citing

*Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)).   Review of the original complaint and the amended complaint reveal no differences of any kind regarding the allegations made against Wido and Whitebread, who appear to have been included because they are members of the Borough Council that took the adverse employment action.   However, neither of these defendants is alleged to have made any false statements about Morris; instead, Morris merely concludes that he was "defamed by the individual defendants and his reputation was severely damaged."  (Am. Compl., ¶ 39.)   This type of vague and conclusory allegation, which fails to allege personal involvement in a critical prong of the stigma-plus claim compels the dismissal of both defendants Wido and Whitebread.

## 2.   Plaintiff's Stigma-Plus Claim Against Defendant Steeber Should Be Dismissed

The plaintiffs' complaint is strewn with vague observations about negative comments and criticism that Steeber directed at Morris or that Steeber made about him.  For example, the amended complaint alleges that in June 2013, at a public meeting, Steeber stated that Morris was "worthless".  (Am. Compl., ¶ 25.)  Morris claims that Steeber said that he was hired to write parking tickets rather than to fight crime.  (*Id.*, ¶ 26.)  At one time Steeber allegedly "severely chastised" Morris for reporting an oil leak that he discovered in the Borough garage.  (*Id.*, ¶ 18.)  Lastly, Morris alleges that Steeber informed him that the Borough's police

committee was suspending him and that there was no appeal, and later apologized to Morris because he should have been provided a hearing.  (*Id*., ¶32.)  These allegations mirror those that were made in the original complaint.  (Doc. 1, Compl., ¶¶ 19-20, 23.)  Only one of these statements is alleged to have been made publicly, and clearly appears to have been made in reference to Steeber's opinion about Morris's job performance, something that does not qualify as the necessary "stigma" because it was made by an elected official in the course of criticizing a police officer's job performance.  *See Kohn*, 817 F. Supp. 2d at 498-99 (the mayor's criticism of school superintendent's job performance to media did not qualify as "stigma" for due process claim).  The remainder of Steeber's criticisms are not alleged to have been made publicly, but appear to have been directed to Morris personally, and thus would not qualify either.  *See Hill*, 455 F.3d at 236 ("To satisfy the 'stigma' prong of the test, it must be alleged that the purportedly stigmatizing statement(s):  (1) were made publicly; and (2) were false.").

Furthermore, with respect to the single public comment that Steeber is alleged to have made about Morris being "worthless," it is alleged to have been made months before he was suspended and his employment terminated.  This temporal gulf between the allegedly public statement and the extinguishment of Morris's employment is another fatal flaw to his claim against Steeber, since in order "[t]o satisfy the 'plus' requirement, a plaintiff must demonstrate that the

alleged defamation harming plaintiff's reputation 'occurs in the course of or is accompanied by extinguishment of a right or status guaranteed by law or the Constitution.'"   *Pasour v. Philadelphia Housing Auth.*, 67 F. Supp. 3d 683, 694 (E.D. Pa. 2014) (quoting *Mun. Revenue Servs., Inc. v. McBlain*, No. Civ. A. 06-4749, 2007 WL 879004, at *4-5 (E.D. Pa. Mar. 19, 2007)).   The spare allegation of a single comment at a board meeting, about the plaintiff's job performance, made months before any adverse employment actions were taken simply does not satisfy either the "stigma" or the "plus" factors, and we find that the paucity of allegations against Steeber compel that the plaintiff's due process claim in Count I be dismissed as to this defendant.

### 3.   Plaintiff's Stigma Plus Claims Against Defendant Noss Should Be Dismissed

The amended complaint suggests that Noss made the most negative commentary about Morris, including the circulation of a letter or campaign pamphlet that contains charges that Morris was doing his job poorly and was even engaging in theft of public resources.   Morris avers that on numerous occasions in 2012 and 2013, Noss called the plaintiff a "thief".   (Am. Compl., ¶24.) Additionally, Morris claims that Noss chastised him for reporting an oil leak he discovered in the Borough garage to an unidentified "state official."   (*Id.*, ¶ 18.) Morris claims that Noss yelled at him for writing down a $300 parking ticket to

$15, stating that "you should be fired.  You don't do anything."  (*Id*., ¶ 19.)  Like Steeber, Noss is alleged to have complained that Morris was not doing his job as a police officer.

Between  September  and  November  2013,  Noss  circulated  a  written document in which he criticized Morris as untruthful and failing to perform his job duties  properly.   (*Id*., ¶¶  29-30.)   During  a  public  meeting,  Noss  echoed  these complaints,  stating  that  Morris  was  useless  and  a  liar  and  not  doing  his  job properly.  (*Id.*, ¶ 28.)

As  an  initial  matter,  these  allegations  are  identical  to  those  that  were advanced  in  the  initial  complaint.   (Doc. 1, Compl., ¶¶ 21-24, 29, and 33-34.) Many of these allegations appear to go directly to Noss's criticisms of Morris's job performance and, as noted above, such criticism generally will not qualify as the necessary  "stigma"  because  it  was  made  by  an  elected  official  in  the  course  of criticizing a police officer's job performance.  *See Kohn*, 817 F. Supp. 2d at 498-99 (the mayor's criticism of school superintendent's job performance to media did not qualify  as  "stigma"  for  due  process  claim).   With  the  exception  of  Noss's circulated  publication  and  verbal  criticism  at  a  public  meeting,  none  of  the remaining allegations concern public utterances or publication to a third party, and thus would not on their own be sufficient to state a claim; Morris has simply failed

to adorn these spare allegations with averments to show that the criticisms were uttered publicly.

What gives the Court brief pause, however, are the charges that are set forth in a letter that Noss authored that was purportedly circulated throughout the Borough. The defendants argue that this letter was merely "campaign literature," and thus should be found insufficient as a matter of law to support a defamation or stigma-plus due process claim. In support of this argument, the defendants rely on a decision in which a district court found that campaign material that contained political rhetoric critical of another public official constituted protected First Amendment political speech activity that could not be used to support a claim for defamation under Pennsylvania law. *See Satterfield v. Borough of Schuylkill Haven*, 12 F. Supp. 2d 423, 442 (E.D. Pa. 1998).

The document that Noss allegedly authored and which was circulated throughout the community contains charges that Morris was not doing what he was hired to do as police officer, but instead "sits in his office 'doing paperwork' or at the fire hall, chatting with Kevin Morris!" (Am. Compl, Ex. A, p. 1.) The document also claims that Morris cashed two checks for the same time period worked and failed to bring that matter to the Borough Council's attention until he was confronted by an auditor's report, and even then it took months for Morris to repay the money. (*Id.,* p. 2.) The document also claims that Morris falsely altered

his time card, and received a three-day suspension as a result.  (*Id*.)  The document appears to have been written in defense of charges that Noss had been harassing the Borough police department and its personnel, which steps that Noss claims were taken to protect the interests of Shickshinny Borough taxpayers.   The document concludes by thanking the residents for reading the letter and asking for their vote to retain Noss, Wido and the Borough Mayor, Clarence Lewis.  (*Id*., p. 6.)

Although we think it is a somewhat close call, we ultimately do not find that the combination of Noss's alleged private criticisms of Morris's job performance, or the circulation of what clearly appears to have been campaign literature is sufficient to support a viable stigma-plus claim in this case.   Some of the information contained in this campaign document, which is plainly political, does not even seem to be untrue; Morris does not deny that he (or his wife) cashed two checks for the same services – he simply explains that it was an innocent mistake. Likewise, Morris does not dispute that he was, in fact, suspended for making a false entry on his time card.  At most, the only allegedly untruthful statements appear to be Noss's insinuation that Morris did an inadequate job as a police officer and that the Borough deserved better policing than Morris was providing. On balance, we do not find that Morris has adequately alleged facts to suggest that this campaign circular was an official statement by the Borough, and we do not

find that he has alleged that the document was, in general, false.  He simply concludes summarily that because it was authored by an elected official, contained critical allegations, and was circulated throughout the municipality that it satisfies the "stigma" prong of the due process claim.  We do not read *Hill* to say that such an allegation is sufficient, and we find *Satterfield* to suggest that such a document, which is plainly political in nature, could not independently suffice to satisfy that "stigma" prong of this claim since such political speech is privileged under the First Amendment.

Here, Morris has tried to bolster his stigma-plus claim with numerous instances where he was simply criticized by Noss, even in private.  There are but two allegations that Noss made public statements that were critical of Morris, but these appear to have been made either in public criticism of Morris's official conduct, or as political rhetoric in a campaign circular that spoke to matters of public concern that were, in at least two instances, not even materially false.  Moreover, as with the allegations against Steeber, Morris has not alleged sufficient facts to tie Noss's alleged criticisms of him with the Borough's eventual decision to terminate his employment, and, therefore, has not alleged sufficient facts to support either the "stigma" or the "plus" prongs of the due process claim.  Therefore, it will be recommended that the Court grant the defendants' motion to

have this claim dismissed with respect to defendants Wido, Whitebread, Steeber, and Noss.

### C.    First Amendment Retaliation

In Count III of the amended complaint, Morris alleges that the Borough and the individual defendants retaliated against him for engaging in protected conduct by terminating his employment.   The plaintiff previously brought a retaliation claim that was set forth in what we determined was a "confusing and shifting fashion."  (Doc. 22, p. 22.)   We recommended that the plaintiffs be directed to replead this cause of action to provide a more definite statement of the nature of the claim and the facts that could support it, and the District Court adopted this recommendation.  (Doc. 27, p. 3.).   Upon consideration of the re-filed pleadings, we concluded that the plaintiffs have failed to heed this admonition.

The plaintiffs' retaliation claim remains confusing.   Morris first contends that the defendants terminated his employment, harassed him, defamed him, and improperly withheld his wages "as a result of the fact that the plaintiff Brian Morris complained about the defendants' violation of his rights under the United States Constitution."  (Am. Compl., ¶ 41.)   Morris alleges, generically, that he "complained to the individual defendants when they improperly disciplined him and when they defamed him . . . ."  (*Id.*, ¶42.)  He also claims that he complained that the defendants were attempting to "set up a secret meeting to discipline him . .

. ." (*Id.*, ¶ 43.)  Most curiously, but no more specifically, the plaintiffs allege that

the defendants disciplined, suspended, and eventually terminated Morris's

employment "because he was doing his job properly." (*Id.*, ¶ 44.)  Morris does not

explain in any way how being disciplined for "doing his job properly" sets forth a

viable cause of action under federal law for retaliation.  Reading the complaint

liberally, at a later place in the pleading in a separate count, the plaintiffs seem to

be saying that the defendants retaliated against him because he "went to the

Pennsylvania Labor Relations Board" in order to resolve a pay dispute.  (*Id.*, ¶¶6-

62.)

     To make out a claim for First Amendment retaliation, a plaintiff must aver

facts to show:  (1) he engaged in constitutionally protected activity; (2) the

defendants retaliated against him in a way that was sufficient to deter a person or

ordinary firmness from exercising his rights; and (3) that there exists a causal

connection between the protected activity and the retaliatory action.  *Thomas v.*

*Independence Twp.*, 463 F. 3d 285, 296 (3d Cir. 2006).  Notably, the Supreme

Court has made clear that a public employee's speech activity or conduct that is

part of his official job duties is not activity that is subject to First Amendment

protection.  *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006).  Following *Garcetti*,

the Third Circuit has explained that "a public employee's speech activity is

protected when (1) in making it, the employee spoke as a citizen, (2) the statement

involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently than any other member of the general public' as a result of the statement he made." *Hill*, 455 F.3d at 241-42 (quoting *Garcetti*, 547 U.S. at 418).

Notwithstanding the Court's direction to the plaintiffs to provide a more specific statement regarding the basis for the retaliation claim, they have not done so in this case. The plaintiff does not allege any facts to suggest that he spoke out on matters of public concern, or that he engaged in any protected speech activity that inspired the defendants to retaliate against him. Moreover, his apparent suggestion that he suffered reprisals for "doing his job properly" does not implicate protected First Amendment interests and cannot support a First Amendment retaliation claim.

The retaliation claim is set forth in Count III of the amended complaint, and yet the only potentially meritorious basis for the claim is buried in Count IV of the amended complaint, labeled "Due Process," where Morris states that he "believes and, therefore, avers that he was disciplined and ultimately terminated" because he "went to the Pennsylvania Labor Relations Board" over a pay dispute. (Am. Compl., ¶ 50.) The plaintiffs then claim that Morris's "Constitutional Rights to pursue legal recourse were violated by the defendants' action." (*Id.*) The plaintiff does not allege any other facts regarding this administrative grievance with the

Pennsylvania Labor Relations Board, or offer any averments that would tie this action to his discipline and termination other than his conclusory belief that such a connection exists.

It is clear that filing grievances under a collective bargaining agreement or similar petitioning activity is activity that implicates the Petition Clause of the First Amendment. *Brennan v. Norton*, 350 F.3d 399, 417 (3d Cir. 2003). Although a plaintiff's speech activity must touch upon matters of public concern in order to qualify for First Amendment protection, "the same is not true where the speech itself constitutes the plaintiff's lawsuit." *Id.* Instead, "a plaintiff need only show that his/her lawsuit was not frivolous in order to make out a prima facie claim for retaliation under the Petition Clause." *Id.*; *see also San Filippo v. Bongiovanni*, 30 F.3d 424, 434-35 (3d Cir. 1994) ("The mere act of filing a non-sham petition is not a constitutionally permissible ground for discharge of a public employee.").

Although petitioning activity may, therefore, provide a basis for a First Amendment retaliation claim, the plaintiff has not alleged facts with sufficient clarity to demonstrate that this is even the nature of his claim. Although Morris "believes and, therefore, avers" that his complaint over a pay dispute was met with retaliatory discipline and eventual termination, he provides no factual support for this belief or averment. He does not indicate when he went to the PLRB, and does

not allege facts that could tie this alleged activity to discipline or criticism that he faced by the Borough's elected officials.

Instead, in his opposition brief, he ignores the petitioning activity entirely and doubles down on his contention that he engaged in certain speech activity by alerting officials to an oil leak that he had discovered in a garage sometime following a flood in 2011. The plaintiff then suggests that this activity soured his relationship with some of the Council members, who were involved in his eventual termination in 2014. Thus, the single piece of speech activity that the plaintiff insists serves as support for his First Amendment retaliation claim occurred years before his suspension and termination. The temporally remote event, unadorned with other plausible factual averments tying it to the plaintiffs' eventual termination, will not support a First Amendment retaliation claim because there is an absence of evidence suggestive of a causal connection.

In some cases, "a suggestive temporal proximity between the protected activity and the alleged retaliatory action can be probative of causation." *Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003) (citing *Rauser v. Horn*, 241 F.3d 330, 334 (3d Cir. 2001). However, even when temporal connection is probative, "the timing of the alleged retaliatory action must be unusually suggestive of retaliatory motive before a causal link will be inferred." *Id.* Here, we have the opposite problem. The plaintiff, in his amended complaint, alleges

that he was terminated for doing his job properly and for complaining about various matters to public officials.  Then, in his brief, the plaintiff emphasizes that the public speech activity that serves as his real predicate for relief was his notification to public officials regarding an oil leak in 2011, years before he was terminated.  Although the plaintiff suggests that he faced regular and routine harassment by two members of the Council, we do not find that the plaintiffs have provided the kind of clarity regarding the nature of their First Amendment retaliation claim as directed, and we now find that the facts alleged in support of that claim are legally insufficient to permit this claim to proceed as pled.

However, because Morris has arguably suggested that he engaged in protected activity other than the reporting of a single oil leak in 2011 that could serve as support for a First Amendment retaliation claim – namely, the filing of a grievance with the PLRB – out of an abundance of caution we will recommend that he be given one final opportunity to amend his complaint to articulate this claim to more fully articulate how his act of petitioning activity was tied to retaliatory adverse action taken against him.[3]

---

[3]   In their opposition brief, the plaintiffs defend their "confusing and shifting" retaliation claim by positing that their pleading confusion "is because all of the reasons contributed to the plaintiff's termination.  No single incident was necessarily determinative.  Any of the retaliatory incidents may have been a motivating factor in the plaintiff's termination." (Doc. 35, p. 9.)  This kind of generality will not support a claim for retaliation.  If they are given leave to amend their complaint for a final time the plaintiffs should take care to identify actual protected activity, whether it be petitioning activity or speech that actually qualifies as protected speech by a public

### D.  Due Process

In addition to his "stigma-plus" due process claim, Morris has set forth in Count IV a separate "due process" count, but it is unclear exactly what due process rights Morris is claiming the defendants violated, or whether his claim asserts a violation of substantive or procedural due process.  Instead, in this count, the plaintiffs allege that Morris "was terminated in part because he attempted to do his job properly" by investigating certain misappropriation of funds by a Council member.  (Am. Compl., ¶ 47.)  In the next paragraph, the plaintiff shifts focus entirely and offers additional allegations – and explanation – regarding an incident in which he or his wife cashed two checks that were issued for the same pay period.  (*Id.*, ¶48.)  The plaintiffs aver that the double payment was simply a misunderstanding that the Borough mishandled, but instead the defendants refused to issue Morris further payments until he returned the money – something he claims is "a violation of the law." (*Id.*, ¶ 49.)  Morris then claims he went to the PLRB over this dispute, and he claims he was later terminated for taking this step. (*Id.*, ¶ 50.)  Nowhere in any of these allegations is an explanation of the due process rights that Morris believes were violated.

---

employee, and articulate how that protected activity was met with genuine retaliatory adverse action.  Conclusory blanket statements about a campaign of harassment, or conflict between the plaintiff and two Council members, will simply not be sufficient.

Indeed, this due process count bears substantial similarity to the due process count contained in the original complaint.  (Doc. 1, Compl., ¶¶ 60-62.)  The Court previously concluded that the allegations offered were insufficient to support a due process claim, and we are compelled to reach that same conclusion upon consideration of the amended complaint.   In truth, Morris's secondary "due process" claim appears really to be a continuation of his First Amendment retaliation claim, since it is predicated on similar allegations that he was disciplined for doing his job and for filing a petition with the PLRB, though he offers no facts to support this continued theory of liability.  Although we do not agree with the defendants that petitioning activity over a personal matter is incapable of supporting a retaliation claim, as explained above, we do agree that the plaintiffs have not offered anything more than conclusory and scattershot allegations in support of a retaliation claim that was repackaged as a "due process" claim.

The defendants have offered argument that Morris lacked a sufficient property interest in his employment to support a due process claim in any event, because he was simply a part-time officer.  This argument would have the Court consider matters that are outside of the pleadings and would, in most cases, be more appropriate in a motion for summary judgment.  In this case, Morris has not even articulated the basis for his due process claim with sufficient clarity to

warrant analysis under the standards governing due process causes of action for unlawful termination and the claim, as pled, is plainly deficient.

The Fourteenth Amendment provides that a State may not "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. "A procedural due process claim is subject to a 'two-stage' inquiry: (1) whether the plaintiff has 'a property interest protected by procedural due process,' and (2) 'what procedures constitute 'due process of law.' " *Schmidt v. Creedon*, 639 F.3d 587, 595 (3d Cir. 2011) (quoting *Gikas v. Wash. Sch. Dist.*, 328 F.3d 731, 737 (3d Cir. 2003)).

Typically under Pennsylvania law, police officers have a constitutionally protected property interest in not being terminated or suspended without good cause. *Id.* If that law would apply to Morris's employment with the Borough, then the Court would need to determine whether Morris received adequate process prior to his suspension and termination – something that he seems to suggest he may not have received. Typically that law would require at least that "a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Id.* (quoting *Biliski v. Red Clay Consol. Sch. Dist. Bd. Of Educ.*, 574 F.3d 214, 220 (3d Cir. 2009)).

It appears at times in the amended complaint that Morris is alleging that he was unlawfully suspended and later terminated without having received notice or a

hearing and at one point he indicates that Steeber acknowledged that he should have been given notice prior to being suspended.  (Am. Compl., ¶ 32.)  Yet he does not clearly articulate that this is what he is actually claiming when he alleges a due process violation, and we are hesitant to speculate about the factual basis of a claim that has been pled so obliquely.  Although the plaintiffs have fallen short of what is required to allege a procedural due process violation in this case, we do find that the complaint strongly suggests that the plaintiffs are attempting to complain about the lack of process that attended the Borough's suspension and eventual termination of Morris's employment.  If this is indeed the case, we are constrained to recommend that the plaintiffs be given one final opportunity to amend their complaint to more clearly and cogently articulate the legal and factual basis for such a procedural due process claim.

### E.    Monell Liability

Morris has named Shickshinny Borough as a defendant in Counts I, III, and IV, alleging that the municipality is liable for due process violations and retaliation.  Morris has not alleged sufficient facts to support a claim for municipal liability.

It is well established that "a municipality cannot be held liable solely because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory."  *Monell v. Dep't of Soc.*

*Services of City of New York*, 436 U.S. 658, 691 (1978); *Grayson v. Mayview State Hosp.*, 293 F.3d 103 (3d Cir. 2002).  Accordingly, a municipal defendant "can only be liable when the alleged constitutional violation implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom." *Michalesko v. Freeland Borough*, 18 F. Supp. 3d 609, 624 (M.D. Pa. 2014).

In some cases, municipal liability may attach for even a single violation if it can be said to be the official policy or decision of the municipality.  *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 487 (1986) ("No one has ever doubted, for instance, that a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body – whether or not that body had taken similar action in the past or intended to do so in the future – because even a single decision by such a body unquestionably constitutes an act of official government policy."). In such instances, "municipal liability under § 1983 attaches where – and only where – a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."  *Id.* at 483.  Thus, in some circumstances, a municipality "may be held liable if the unconstitutional actions are so enacted as the Borough's policy." *Michalesko*, 18 F. Supp. 3d at 624 (citing *Langford v. City of Atlantic City*, 235 F.3d 845, 850 (3d Cir. 2000)).

As the court in *Michalesko* explained in that case, "the *Monell* claim is part and parcel to the plaintiff's due process and free speech claims against the Borough, not a distinct route of recovery.  It appears the council is the Borough's policymaking body.  If that is so, any action it takes would necessarily establish official policy, thereby creating potential liability under *Monell*." *Id.*  Because in that case the plaintiff's § 1983 claims for due process and free speech violations were brought against individual council members who made up the municipality's policymaking body, and because the individual claims were found sufficient to state a claim, the borough's potential for municipal liability remained in the case as well. *Id.*

In this case, we find that the plaintiff has failed to make out a claim for First Amendment retaliation and due process violations.  We have also recommended, however, that the plaintiffs should be given one final opportunity to replead these claims in order to articulate what forms the cornerstone of his allegations:  that he was suspended and eventually terminated without notice and for reasons that were improper or unlawful, without being afforded the opportunity to respond to the Borough's reasons for taking adverse action against him.  Because it appears that the plaintiffs' *Monell* claim is based at least in part on the assertion that the Borough took official action against Morris through its elected Council members, we believe that the most prudent course is to permit the plaintiff to replead his

*Monell* claim as well, to the extent the plaintiff is seeking to make a claim for municipal liability against the Borough relating to his suspension and eventual termination.[4]  As currently pled, the claim is deficient, and fails to state a claim for municipal liability.  Instead, the plaintiffs resort to generalities such as by claiming that it was a "custom of practice in Schickshinny Borough whereby the individual defendants violated the rights of plaintiff openly and without regard to the law." (Am. Compl., ¶8.)  Such conclusory allegations will not be sufficient in any amended complaint, and if the plaintiffs are permitted to re-plead their *Monell* claim with respect to the alleged due process violations that attended the plaintiff's suspension and termination, they should take care to present factual allegations that are plausible, non-conclusory, and tailored to the prevailing law of municipal liability.

---

[4]  The defendants have argued in summary fashion that the plaintiff was a part-time officer and, therefore, not entitled to a hearing or any other process to contest his suspension and termination. (Doc. 34, p. 19.) However, the parties have not focused substantially on whether the plaintiff had a lawful right to any process, and it will be recommended that the Court permit the plaintiff a final opportunity to re-plead his *Monell* claim against the Borough to the extent it relates to his discipline and eventual termination through a vote of the Council.  If the plaintiff does so, and if the defendants' legal argument can properly be addressed under the standards governing motions to dismiss under Rule 12 of the Federal Rules of Civil Procedure, this issue may be more fully addressed at that time.  Otherwise, it may be an argument that is more properly raised through a motion for summary judgment.

**F.    Defamation**

The defendants have moved to dismiss the plaintiffs' defamation claims in Count II only with respect to defendants Wido and Whitebread, and the plaintiffs have conceded that this claim should be dismissed with respect to these two defendants.   The defendants have not moved to dismiss the defamation claim against defendants Steeber and Noss, and the claim should be permitted to proceed with respect to these two defendants.

**G.    Paula Morris's Claim for Loss of Consortium Against the Borough, Wido and Whitebread Should Be Dismissed**

Finally, the defendants have moved to dismiss Paula Morris's claim for loss of consortium with respect to the Borough, and defendants Wido and Whitebread set forth in Count V of the amended complaint.   The defendants noted that this claim was previously dismissed against the Borough, and since the claim is only derivative as to the defamation claim, this claim must also be dismissed against Wido and Whitebread, since the plaintiffs have conceded that the defamation count should be dismissed against these two individuals.

We agree with the defendants that the loss of consortium claim should be dismissed as to the Borough, Wido and Whitebread.   Under Pennsylvania law, a spouse's right to recover for loss of consortium derives from her spouse's ability to recover in tort.  *See, e.g., Pahle v. Colebrookdale Twp.*, 227 F. Supp. 2d 361, 375 (E.D. Pa. 2002); *Szydlowski v. City of Phila.*, 134 F. Supp. 2d 636, 638 (E.D. Pa.

2001); *Danas v. Chapman Ford Sales, Inc.*, 120 F. Supp. 2d 478, 489 (E.D. Pa. 2000). Accordingly, "where the allegedly injured spouse fails to plead a cognizable claim, his spouse's claim for loss of consortium cannot survive." *Quitmeyer v. Se. Pa. Transp. Auth.*, 740 F. Supp. 363, 370 (E.D. Pa. 1990); *see also Balletta v. Spadoni*, 47 A.3d 183, 201 (Pa. Commw. Ct. 2012) (trial court properly dismissed loss of consortium claim after dismissing the spouse's defamation claim).

Furthermore, it is well-settled that, as a general rule, "there is no authority to permit spousal recovery for loss of consortium based on violations of another spouse's civil rights." *Quitmeyer*, 740 F. Supp. at 370. In particular, "there is no authority to consider a loss of consortium claim deriving from a claim of injury by an injured spouse brought pursuant to 42 U.S.C. § 1983. The purpose of section 1983 claims, as intended by Congress, was to provide a federal forum to remedy deprivation of civil rights. It was intended to create 'a species of tort liability' in favor of persons deprived of federally secured rights, not to provide a mechanism for vindication of state torts derived from another's section 1983 claim." *Wiers v. Barnes*, 925 F. Supp. 1079, 1095-96 (D. Del. 1996) (internal quotations, citation and added emphasis omitted). Accordingly, "although there is limited case law on this issue, the federal courts almost universally have dismissed loss of consortium

claims based upon federal civil rights violations." *Brown v. Youth Services Int'l of Baltimore, Inc.*, 904 F. Supp. 469, 470 (D. Md. 1995) (citations omitted).

The foregoing caselaw makes the Court's path straightforward. Paula Morris's loss of consortium claim against the Borough was previously dismissed and should remain dismissed. The plaintiffs have conceded to the dismissal of the defamation claims against Wido and Whitebread, and thus any derivative claim for loss of consortium against these defendants should be dismissed as well. The plaintiffs cannot maintain a loss of consortium claim based upon alleged civil rights violations. Thus, to the extent the plaintiffs suggest that Brian Morris has "alleged viable claims for … First Amendment retaliation, and violation of procedural and substantive due process against defendant Shickshinny Borough as well as the individual defendants, plaintiff Paula Morris' loss of consortium claim is actionable as well," (Doc. 35, p. 16.), this is an incorrect statement of the law. Not only has Brian Morris not articulated plausible civil rights violations at this time, but Paula Morris may not maintain derivative loss of consortium claims based upon her husband's civil rights claims in any event, and thus her claim for loss of consortium against Wido and Whitebread should be dismissed.

## IV.    RECOMMENDATION

For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that the defendants' motion to dismiss the amended complaint (Doc. 33.) be GRANTED as follows:

1.    Count I should be dismissed with respect to all defendants.

2.    Count II should be dismissed with respect to defendants Wido and Whitebread.

3.    Count III should be dismissed with respect to all defendants, with leave granted to amend the complaint a final time to articulate a claim of First Amendment retaliation.

4.    Count IV should be dismissed with respect to all defendants, with leave to amend the complaint a final time to articulate a claim for due process violations relating to Brian Morris's suspension and termination.

5.    Count V should be dismissed with respect to the Borough and defendants Wido and Whitebread.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.   The briefing requirements set forth in Local Rule 72.2 shall apply.   A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.

The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 30th day of March 2016.


*/s/  Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge